UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

WOMAN'S HOSPITAL FOUNDATION,                                 PLAINTIFFS
d/b/a WOMAN'S HOSPITAL;
KYRIA K. BELL;
MANDY M. MANCUSO; and LAKASKA N.
REED

VS.                                                                 CIVIL ACTION NO. _____

ROXANE TOWNSEND, M.D., in Her Official
Capacity as Acting Secretary of the Louisiana
Department of Health and Hospitals; and
CHARLES F. CASTILLE, in His Official
Capacity as Undersecretary of the Office of
Management and Finance of the Louisiana
Department of Health and Hospitals                              DEFENDANTS

## COMPLAINT

The Plaintiffs, Woman's Hospital Foundation, d/b/a Woman's Hospital ("Woman's Hospital") and Kyria K. Bell, Mandy M. Mancuso and Lakaska N. Reed (the "Medicaid Beneficiaries") hereby file suit against Roxane Townsend, M.D., in her official capacity as Acting Secretary of the Louisiana Department of Health and Hospitals, and Charles F. Castille, in his official capacity as Undersecretary of the Office of Management and Finance of the Louisiana Department of Health and Hospitals, and/or their successors. In support of their Complaint, the Plaintiffs state as follows:

### JURISDICTION AND VENUE

1. This is an action for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because the Defendants reside in this district and a substantial part of the events giving rise to the claims occurred in this district.

**PARTIES**

3. Woman's Hospital is a private, not-for-profit women's and infants' specialty hospital in Baton Rouge, Louisiana. Woman's Hospital operates 147 adult beds, 97 bassinettes, and 82 neonatal intensive care unit ("NICU") beds.

4. The individual Plaintiffs include beneficiaries of the Louisiana Medicaid Program and are patients who have received health care services covered under the program, or who plan to receive such covered services, including obstetrical patients, at Woman's Hospital. Plaintiff Kyria K. Bell resides in Baton Rouge, Louisiana. Plaintiff Mandy M. Mancuso resides in Denham Springs, Louisiana. Plaintiff Lakaska N. Reed resides in Baton Rouge, Louisiana. All of the Medicaid Beneficiaries are residents of this judicial district.

5. Defendant Roxane Townsend, M.D. (the "Secretary") is Acting Secretary of the Louisiana Department of Health and Hospitals ("DHH"). The Secretary is sued in her official capacity as Acting Secretary of DHH. As Acting Secretary of DHH, Defendant Roxane Townsend has authority over all actions of DHH related to this Complaint under color of state law. LA R.S. 36:254.

6. Defendant Charles F. Castille (the "Undersecretary") directs the Office of Management and Finance of DHH and oversees Louisiana's Medicaid Program. The Undersecretary has authority over all actions of the Office of Management and Finance relating to the Louisiana Medicaid Program, and has authority over all actions of that agency related to this Complaint under color of state law.

7. The Louisiana Department of Health and Hospitals is the single state agency designated and authorized to administer the Medicaid Program in Louisiana at the State level, in accordance with 42 U.S.C. § 1396a(a)(5) and LA R.S. 36:254, and has entered into a Medicaid provider contract with Woman's Hospital to require the Hospital to provide mandated health care services to eligible Medicaid beneficiaries in accordance with federal and Louisiana law.

## BACKGROUND

### Medicaid

8. Medicaid is an entitlement program, run by the federal and state governments, that pays for comprehensive medical services to certain groups of eligible, low-income persons. Medicaid is the largest program providing medical and health-related services to America's poorest people. Within national guidelines and particular requirements set by the federal government, each state establishes eligibility standards, determines the type, amount, duration and scope of services, sets payment rates for services, and administers the program. The program varies considerably by state, but there are certain minimum federal standards and requirements which all states must meet.

9. Medicaid expenditures are jointly funded by the individual states and the federal government based on a state-specific matching rate determined each year. The matching rate for Louisiana for the federal fiscal year ("FFY") 2008 is approximately 70.0%, which means that of every $100 spent by the Louisiana Medicaid Program, the federal government contributes approximately $70.00, while the State of Louisiana is responsible for approximately $30.00. Louisiana's matching rate is one of the highest of any of the state matching rates.

10. At the federal level, the Secretary of the United States Department of Health and Human Services ("HHS") is responsible for administration of the Medicaid program. HHS'

3

Centers for Medicare and Medicaid Services ("CMS") has responsibility for oversight of the Medicaid program at the federal level. At the state level, DHH, as the single state agency, has direct responsibility for contracting with health care providers and also has oversight of the Louisiana Medicaid Program.

### Louisiana Medicaid Plan

11. A "state plan" is a comprehensive written statement submitted by each state Medicaid agency that describes the nature and scope of the Medicaid program and provides assurance to CMS that the Medicaid program will be administered in conformity with the specific requirements of Title XIX of the Social Security Act, the implementing regulations and other CMS requirements. As mandated by 42 C.F.R. § 430.10, state plans must contain all information necessary for CMS to determine whether the plan should be approved by CMS, in order to serve as a basis for federal financial participation ("FFP").

12. In response to these federal mandates, the State of Louisiana, through DHH, has adopted a state plan which sets forth, among other things, the reimbursement methodology and payment rates to be used for compensating hospitals and other health care providers which participate in the Louisiana Medicaid Program (the "State Plan"). LA R.S. 36:254. At the present time, hospitals are compensated for inpatient services based on arbitrary per diem rates that do not take into account the actual and necessary costs incurred by health care providers in furnishing essential health care services. In fact, hospital payment rates have not remotely kept pace with the cost of medical care or inflation.

13. Moreover, the Louisiana State Plan provides for enhanced Medicaid reimbursement to state-owned facilities without any rational basis or justification. In effect, the State of Louisiana is paying itself disproportionately high Medicaid reimbursement (through the

4
Case 3:07-cv-00711-JJB-DLD   Document 1   10/02/07   Page 4 of 20

use of federal funds) while denying private facilities, including Woman's Hospital, sufficient Medicaid payments in order for those facilities to meet basic patient needs. The result is that for the treatment and care of the same class of Medicaid patients, the State receives a higher Medicaid reimbursement than that paid to Woman's Hospital under the State Plan, without any reasonable justification for such a distinction. Additionally, in 2007 the State paid up to 85% of allowable costs for uninsured patients in non-state hospitals, which is a higher rate than reimbursement for services provided to obstetric and newborn patients that are covered by Medicaid.

14. In addition, upon information and belief, the State Plan makes payments to hospitals serving a disproportionate share of low income patients to compensate hospitals for uncompensated care costs. These payments are referred to as disproportionate share payments ("DSH Payments"). A hospital that provides the majority of its services to pregnant women and infants, such as Woman's Hospital, will have a higher Medicaid population than uncompensated care population, as pregnant women and infants have expanded Medicaid eligibility. The State pays itself 100% of its uncompensated costs under the DSH program for state owned and operated facilities. However, hospitals with a high Medicaid patient base, such as Woman's Hospital, will receive little DSH Payments and will be effectively penalized by the lower Medicaid reimbursement rates such a facility will receive. Pregnant women and children who were meant to be protected under Medicaid are thus instead placed at risk as a result of the low Medicaid rates paid to their providers under the State Plan, including Woman's Hospital.

### Federal Requirements for Medicaid State Plan

15. Federal regulations contain requirements for Medicaid state plans. Specifically, 42 C.F.R. § 447.253 sets forth the following requirements:

> Subsection (b)(1) requires the State to find that "inpatient hospital . . . rates . . . are reasonable and adequate to meet the costs that must be incurred by efficiently and economically operated

5

> providers to provide services in conformity with applicable state and federal laws, regulations, and quality and safety standards."
>
> Subsection (b)(ii)(C) requires that "the payment rates are adequate to assure that recipients have reasonable access, taking into account geographic location and reasonable travel time, to inpatient hospital services of adequate quality."

Similarly, 42 C.F.R. § 447.204 requires that "the agency's payments must be sufficient to enlist enough providers so that services under the plan are available to recipients at least to the extent that those services are available to the general population."

16.     Additionally, the Federal Medicaid Statute itself, at 42 U.S.C. § 1396a(a)(30)(A), requires states in their State Plan to "assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area." This statutory provision is known as the "Equal Access Provision."

17.     As a result of these federal laws and regulations, states are required to provide appropriate, reasonable and sufficient Medicaid reimbursement rates in order to insure that an adequate number of providers are available to render necessary care and services to Medicaid beneficiaries.

### State Requirement to "Maximize" Medicaid Funding

18.     In addition to the foregoing, in 2003 the Louisiana Legislature enacted LA R.S. 46:979, which requires that the DHH must provide for "maximizing" Medicaid funding and rates for, among other services, inpatient services to fragile newborns or critically ill children provided in a Level III Regional NICU.  LA R.S. 46:979 now provides:

6

> The department shall adopt and promulgate rules and regulations in accordance with the Administrative Procedure Act that provide for maximizing Medicaid funding and rates for those hospitals that provide either of the following:
>
> (1) Inpatient services to fragile newborns or critically ill children in either a Level III Regional Neonatal Intensive Care Unit or a Level I Pediatric Intensive Care Unit, which units have been in operation on or before January 1, 2003.
>
> (2) A Medicaid utilization rate of twenty-five percent of total inpatient days or greater.

19. Woman's Hospital meets both of the criteria set forth in this statute. It operates a Level III Regional Neonatal Intensive Care Unit which provides inpatient services to fragile newborns and critically ill children and which was established and was in operation prior to January 1, 2003. Woman's Hospital also had an actual Medicaid utilization rate of 52.6% in 2006 and thus has a Medicaid utilization rate more than double that required by LA R.S. 46:979(2). As such, the Defendants and DHH are mandated by the specific language of LA R.S. 46:979 to "…provide for maximizing Medicaid funding and rates…" paid to Woman's Hospital for Medicaid reimbursement under the State Plan.

20. Despite this specific legislative directive, the Defendants and DHH have failed to take appropriate action to "provide for maximizing Medicaid funding and rates" paid to Woman's Hospital in that the Defendants and DHH have failed to provide for appropriate, reasonable and sufficient Medicaid reimbursement rates to Woman's Hospital as otherwise required under applicable federal and state law and as otherwise alleged herein. Defendants and DHH have based the inpatient reimbursement rates under the State Plan on arbitrary per diem rates that do not take into account the actual and necessary costs incurred by health care providers, especially Woman's Hospital, who furnish essential health care services. Defendants and DHH have implemented a

State Plan which pays state-owned facilities and rural hospitals a disproportionately high Medicaid reimbursement while denying private facilities, including Woman's Hospital, sufficient Medicaid payments in order for those facilities to meet basic patient needs, and have failed to otherwise promulgate appropriate and adequate rules and regulations to "maximize" the Medicaid funding and rates paid to Woman's Hospital and other facilities in its same classification, despite the anticipated existence of a projected budget surplus in the State of Louisiana in Fiscal year 2007 in an amount in excess of $3 billion.

21. All of these actions evidence the failure of the Defendants and DHH to take appropriate action to "maximize" the Medicaid funding and rates paid to Woman's Hospital, as mandated by the express provisions of LA R.S. 46:979.

### Woman's Hospital

22. Woman's Hospital is a private, not-for-profit women's and infants' specialty hospital in Baton Rouge. Woman's Hospital currently operates 147 adult beds, 97 bassinettes, and 82 NICU beds. The Hospital's more than 8,000 deliveries per year represent more than 75% of the births in its seven parish region (Medicaid Region 2) and approximately 14% of all births in Louisiana, and make it the 19th largest hospital by number of deliveries in the nation.

23. A substantial number of Woman's Hospital's patients are Medicaid recipients. Specifically, 49% of Woman's Hospital's deliveries and 59% of its neonatal patient days were for Medicaid beneficiaries in the first eleven (11) months of its fiscal year 2007. The number of Medicaid deliveries at Woman's Hospital has doubled from 1999 to 2006.

24. Woman's Hospital provides over two-thirds of the total obstetrical capacity and nearly three-quarters of the neonatal intensive care unit (NICU) capacity in the Baton Rouge area.

It operates a Level III Regional Obstetrics and NICU program. These statistics serve to demonstrate that if Woman's Hospital did not accept Medicaid patients, there would not be enough capacity in the remaining hospitals in the regional area to care for Medicaid obstetrical patients. Defendants and DHH knew or should have known that the threat to access to care for pregnant women and newborns for the Baton Rouge region would continue to deteriorate.

25.     Since 2002, Woman's Hospital's financial losses on Medicaid patients have steadily increased. The 2006 payments for Medicaid services covered only 77% of the cost of providing those services, and payments in 2007 are estimated to cover even less of the costs. The economic shortfall to Woman's Hospital from Medicaid programs was approximately $18 million in 2006.

26.     Due to the growth in the Baton Rouge regional area population over the last two years, and especially as a result of Hurricane Katrina, Woman's Hospital has outgrown its current facilities and determined that it must build a new facility in order to adequately serve the healthcare needs of pregnant women and newborns in the future. However, the magnitude of its current and growing Medicaid and uninsured population, extraordinary Medicaid losses, the worsening trend, and the added costs associated with a needed replacement facility will severely increase Woman's Hospital's losses, therefore jeopardizing this essential project. The end result is that the entire community's access to obstetrical and neonatal care will be greatly threatened and suffer unless Medicaid's woefully inadequate reimbursement to Woman's Hospital is responsibly and legally addressed.

### Woman's Hospital's Efforts to Secure Adequate Medicaid Payments

27.     For the past six years, Woman's Hospital has worked extensively with federal and state officials in an effort to secure adequate Medicaid reimbursement through an appropriate

adjustment of Medicaid payment rates. Woman's Hospital began this initiative in 2000 by meeting with elected officials and representatives of DHH to educate them concerning the need for changes to the reimbursement rate for well-baby newborns. Woman's Hospital continued its advocacy efforts over the years to raise awareness that proposed rate reductions would adversely affect both the community of Medicaid beneficiaries and Woman's Hospital itself, which provides an extensive amount of required and needed community services to Medicaid beneficiaries.

28. In 2003, Woman's Hospital initiated meetings with the staff of then-Governor Mike Foster, members of the Baton Rouge delegation, and legislative leaders to ask for their assistance in addressing the issues between DHH and hospital providers regarding Medicaid reimbursement rates, proposed rate reductions, access to needed services, and the economic impact these have on the hospitals' long-term viability. Additionally, Woman's Hospital continued its efforts to meet with state officials to request reconsideration of proposed rate reductions to private hospitals. Moreover, Woman's Hospital submitted testimony and remarks to the Senate Finance Committee in 2003 on the importance of stable funding of the Medicaid program to hospital providers.

29. In 2005, 2006 and 2007, Woman's Hospital increased its efforts to meet with members of the current state administration to raise awareness for its plight due to the provision of increased levels of care to the Medicaid program at significantly reduced rates of reimbursement and requested their assistance in obtaining adequate funding. From September 2006 to March 2007, Woman's Hospital has held no less than 30 meetings with over 22 members of the State Legislature and State Executive Cabinet. Yet, these efforts have been to no avail. Woman's Hospital continues to face the same economic obstacles to providing the ever-increasing level of care and services as mandated under the Medicaid program at a rate of reimbursement that

continues to threaten the future viability of the hospital and access to care for the Medicaid population.

30. Since 2003 to the present, Defendants and DHH have been legally obligated to "maximize" Medicaid funding for certain specific services provided by Woman's Hospital, including inpatient services to fragile newborns or critically ill children. LA R.S. 46:979. Defendants and DHH have arbitrarily refused to do so despite the repeated efforts undertaken by Woman's Hospital to secure adequate Medicaid funding, expressing philosophically that non-profit hospitals have a community obligation to suffer such increasing and severe financial losses. Woman's Hospital thus avers that it has exhausted all possible administrative remedies otherwise available to it to secure adequate, reasonable, responsible, and necessary Medicaid funding, including to require Defendants and DHH to "maximize" Medicaid funding as they are mandated by federal and state law.

## COUNT ONE

**(Violation of Equal Access Provision)**

31. The Plaintiffs incorporate by reference Paragraphs 1 through 30 above, as if fully set forth herein.

32. The Federal Medicaid Statute, 42 U.S.C. § 1396a(a)(30)(A), requires states in their State Plan to "assure that payments consistent with efficiency, economy, and quality of care are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area."

33. The Louisiana State Plan violates the Equal Access Provision by failing to provide adequate reimbursement rates to hospitals, including Woman's Hospital, so that health care services may be available to Medicaid recipients. In the case of Woman's Hospital, the Medicaid payments are so inadequate that the Hospital's escalating financial losses are severely threatening its ability to provide adequate access to Medicaid and non-Medicaid patients. If Medicaid reimbursement payments to the Hospital are not immediately increased, there will be a chilling effect on Woman's Hospital's ability to fully participate in the Louisiana Medicaid Program, thereby denying access to medical services to a significant number of Medicaid obstetrical and neonatal patients. Additionally, this impact would cause the State of Louisiana to be out of compliance with the federal Medicaid program. For these reasons, the reimbursement rates now being paid by the DHH and the State of Louisiana under the State Plan are in direct violation of the Federal Medicaid Statute and the applicable implementing regulations.

34. As a result of these unlawful activities by DHH, Woman's Hospital and the Medicaid Beneficiaries will sustain direct and significant damage and harm. In the case of Woman's Hospital, the ongoing violations of the Equal Access Provision by the Defendants and DHH will deprive Woman's Hospital of the ability to serve its community by providing comprehensive obstetrical and newborn services to all residents, regardless of economic status. Moreover, the Medicaid Beneficiaries will be denied access to their hospital-of-choice for obstetrical services and related health care.

35. All of the above-described actions and conduct of the Defendants and DHH, as well as the terms and provisions of the Louisiana State Plan, were performed or arise under color of state law. Pursuant to 42 U.S.C. § 1983, the Plaintiffs are entitled to relief in order to prevent deprivation of rights secured to the Plaintiffs by the United States Constitution, and federal laws and regulations.

36. The Plaintiffs do not have an adequate remedy at law in order to address and prevent the violations of federal law and regulations by the Defendants and DHH.

37. The Plaintiffs have complied with all necessary conditions precedent to bringing this action. Under the circumstances, the Plaintiffs have no effective administrative remedies. Woman's Hospital has worked extensively with federal and state officials to address these problems and concerns, all to no avail. The Defendants and DHH have consistently and categorically refused to take any administrative action in order to remedy the grossly inadequate Medicaid reimbursement currently being paid to Woman's Hospital.

## COUNT TWO

### (Violation of Federal Regulations)

38. The Plaintiffs incorporate by reference Paragraphs 1 through 37 above, as if fully set forth herein.

39. The above-described actions and conduct of the Defendants and DHH, and the terms of the Louisiana State Plan itself, violate applicable federal regulations, including, but not limited to, 42 C.F.R. §§ 447.204 and 447.253.

40. All of the above-described actions and conduct of the Defendants and DHH, as well as the terms and provisions of the Louisiana State Plan, were performed or arise under color of state law. Pursuant to 42 U.S.C. § 1983, the Plaintiffs are entitled to relief in order to prevent deprivation of rights secured to the Plaintiffs by the United States Constitution, and federal laws and regulations.

41. The Plaintiffs do not have an adequate remedy at law in order to address and prevent the violations of federal law and regulations by the Defendants and DHH.

42. The Plaintiffs have complied with all necessary conditions precedent to bringing this action. Under the circumstances, the Plaintiffs have no effective administrative remedies. Woman's Hospital has worked extensively with federal and state officials to address these problems and concerns, all to no avail. The Defendants and DHH have consistently and categorically refused to take any administrative action in order to remedy the grossly inadequate Medicaid reimbursement currently being paid to Woman's Hospital.

## COUNT THREE

### (Violation of Equal Protection Clause)

43. The Plaintiffs incorporate by reference Paragraphs 1 through 42 above, as if fully set forth herein.

44. By expressly providing, in the Louisiana State Plan, for enhanced Medicaid reimbursement to state-owned facilities in a discriminatory and irrational manner, while simultaneously making grossly inadequate Medicaid payments to other facilities, including Woman's Hospital, the Defendants and DHH have violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

45. All of the above-described actions and conduct of the Defendants and DHH, as well as the terms and provisions of the Louisiana State Plan, were performed or arise under color of state law. Pursuant to 42 U.S.C. § 1983, the Plaintiffs are entitled to relief in order to prevent

deprivation of rights secured to the Plaintiffs by the United States Constitution, and federal laws and regulations.

46. The Plaintiffs do not have an adequate remedy at law in order to address and prevent the violations of federal law and regulations by the Defendants and DHH.

47. The Plaintiffs have complied with all necessary conditions precedent to bringing this action. Under the circumstances, the Plaintiffs have no effective administrative remedies. Woman's Hospital has worked extensively with federal and state officials to address these problems and concerns, all to no avail. The Defendants and DHH have consistently and categorically refused to take any administrative action in order to remedy the grossly inadequate Medicaid reimbursement currently being paid to Woman's Hospital.

## COUNT FOUR

**(Violation of State Law)**

48. The Plaintiffs incorporate by reference Paragraphs 1 through 47 above, as if fully set forth herein.

49. This Court has jurisdiction of this Count as a pendant state law claim to the federal claims set forth and described in Count's One through Three of this Complaint

50. The above-described actions and conduct of the Defendants and DHH, and the terms of the Louisiana State Plan itself, violate applicable Louisiana state law, specifically including La. Revised Statutes 46:979, in that the Defendants and DHH have failed to adopt and promulgate adequate rules and regulations that provide for maximizing Medicaid funding and rates for inpatient services to fragile newborns provided at Woman's Hospital, which is a Level III Regional Neonatal Intensive Care Unit.

51. Not only have the Defendants and DHH failed to adopt and promulgate adequate rules to maximize Medicaid funding as contemplated by this statute, the Medicaid reimbursement

15

rates in fact paid by the Defendants and DHH to Woman's Hospital have specifically failed to maximize funding of Medicaid rates for services provided to fragile newborns at Woman's Hospital, as required and contemplated by applicable state law.

52. The Plaintiffs do not have an adequate remedy at law in order to address and prevent these violations of state law by the Defendants and DHH.

53. The Plaintiffs have complied with all necessary conditions precedent to bringing this action. Under the circumstances, the Plaintiffs have no effective administrative remedies. Woman's Hospital has worked extensively with all appropriate state officials to address these problems and concerns, all to no avail. The Defendants and DHH have consistently and categorically refused to take any administrative action in order to remedy the grossly inadequate Medicaid reimbursement currently being paid to Woman's Hospital or to otherwise maximize the Medicaid benefits as contemplated by La. R.S. 46: 979.

WHEREFORE, the Plaintiffs hereby demand the following relief:

(1) A declaratory judgment that the above-described conduct and activities of the Defendants and DHH violate the Federal Equal Access Provision;

(2) A declaratory judgment that the above-described conduct and activities of the Defendants and DHH violate federal regulations;

(3) A declaratory judgment that the Louisiana State Plan violates federal law and regulations;

(4) A declaratory judgment that the Louisiana State Plan violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

(5) A declaratory judgment the Louisiana State Plan violates applicable Louisiana State law, and specifically La. R.S. 46:979.

(6) A permanent injunction mandating the Defendants to take any and all necessary action to bring the Louisiana State Plan into compliance with all applicable federal laws and regulations;

(7) A permanent injunction mandating the Defendants to take any and all action necessary to amend the Louisiana State Plan in order to insure adequate reimbursement rates to Woman's Hospital, as required by federal law and regulations;

(8) A permanent injunction mandating the Defendants to take any and all action necessary to amend the Louisiana State Plan in order that it complies with the provisions of La. R.S. 46: 979.

(9) An award of attorneys' fees, expert witness fees, costs and expenses pursuant to 42 U.S.C. § 1988; and

(10) Such other and additional relief as the Court may deem appropriate.

Dated: October 2, 2007.

    Respectfully submitted,

    WOMAN'S HOSPITAL FOUNDATION,
    d/b/a WOMAN'S HOSPITAL

    By Its Attorneys

    BAKER, DONELSON, BEARMAN,
    CALDWELL & BERKOWITZ, PC

    DONNA D. FRAICHE (LA Bar # 05814)
    JENNIFER DECUIR (LA Bar #29189)
    One American Place
    301 North Main Street, Suite 810
    Baton Rouge, LA 70825
    (225) 381-7000 phone

(225) 343-3612 fax
dfraiche@bakerdonelson.com (Donna Fraiche)
jdecuir@bakerdonelson.com (Jennifer DeCuir)


And

AUBREY B. HIRSCH, JR. (LA Bar #06948)
201 St. Charles Ave., Suite 3600
New Orleans, LA 70170
(504) 566-5218 phone
(504) 636-3918 fax
ahirsch@bakerdonelson.com


And

BARRY K. COCKRELL
(*Pro Hac Vice* admission pending)
(Mississippi Bar #6327)
Meadowbrook Office Park
4268 I-55 North
Jackson, MS 39211
(601) 351-2426 phone
(601) 592-2426 fax
bcockrell@bakerdonelson.com



BY: s/ Donna D. Friache
   DONNA D. FRAICHE, Trial Attorney
   for Woman's Hospital Foundation,
   d/b/a Woman's Hospital

   And

KYRIA K. BELL;
MANDY M. MANCUSO; and LAKASKA N. REED

By Their Attorneys

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

DONNA D. FRAICHE (LA Bar # 05814)

18

JENNIFER DECUIR (LA Bar #29189)
One American Place
301 North Main Street, Suite 810
Baton Rouge, LA 70825
(225) 381-7000 phone
(225) 343-3612 fax
dfraiche@bakerdonelson.com (Donna Fraiche)
jdecuir@bakerdonelson.com (Jennifer DeCuir)

And

AUBREY B. HIRSCH, JR. (LA Bar #06948)
201 St. Charles Ave., Suite 3600
New Orleans, LA 70170
(504) 566-5218 phone
(504) 636-3918 fax
ahirsch@bakerdonelson.com

And

BARRY K. COCKRELL
(*Pro Hac Vice* admission pending)
(Mississippi Bar #6327)
Meadowbrook Office Park
4268 I-55 North
Jackson, MS 39211
(601) 351-2426 phone
(601) 592-2426 fax
bcockrell@bakerdonelson.com

And

CRAWFORD LEWIS, PLLC
JAMES R. LEWIS (LA Bar #08844)
LEIGH F. GROVES (LA Bar #23737)
450 Laurel Street, Suite 1600
Baton Rouge, LA 708001
(225) 343-5290 phone
(225) 383-5508 fax
jlewis@crawford-lewis.com (James Lewis)
lgroves@crawford-lewis.com (Leigh Groves)

BY: s/ James R. Lewis
  JAMES R. LEWIS, Trial Attorney

19

For Individual Plaintiff Beneficiaries

CLERK OF COURT:

Please issue an appropriate Summons to
each of the following defendants:

(1) ROXANE TOWNSEND, M.D., in her official
capacity as Acting Secretary of the Louisiana
Department of Health and Hospitals
628 N. 4th Street
Baton Rouge, LA 70802; and

(2) CHARLES F. CASTILLE, in his official
capacity as Undersecretary of the Office
of Management and Finance of the Louisiana
Department of Health and Hospitals
628 N. 4th Street
Baton Rouge, LA 70802