UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

WOMEN'S HOSPITAL
FOUNDATION, ET AL.

CIVIL ACTION

VS.

NO.  07-711-JJB-DLD

ROXANE TOWNSEND, ET AL.


**RULING ON MOTION TO DISMISS**

This matter is before the court on a Motion to Dismiss (doc. 9) for failure to

state a claim upon which relief may be granted by Defendants Alan Levine, current

Secretary of the Department of Health and Hospitals of the State of Louisiana, and

Charles Castille, current Undersecretary of the Office of Management and Finance

of the Louisiana Department of Health and Hospitals.  The Defendants are being

sued in their respective official capacities.  The Plaintiffs, Women's Hospital and

individually named Medicaid Recipients, oppose this motion (doc. 21).   Oral

argument was held on Tuesday, May 27, 2008.  Jurisdiction exists pursuant to 28

U.S.C. § 1331.


**The Complaint**

Medicaid is a joint federal-state program designed to provide health care for

needy individuals.  As a cooperative federal-state program, Medicaid authorizes the

federal government to provide funds to participating states who administer medical

assistance to individuals "whose income and resources are insufficient to meet the

1

costs of necessary medical services." 42 U.S.C. § 1396 (2008).  Medicaid recipients do not receive a direct cash payout; instead, Medicaid pays health care providers for covered services.

The Medicaid program is a voluntary program in which each state may choose to participate.  At the federal level, the Department of Health and Human Services ("HHS") is responsible for administering the Medicaid program.  The Centers for Medicare and Medicaid Services ("CMS"), an agency within HHS, oversees the Medicaid program at the federal level.  If the state elects to participate, it must submit a state plan and must implement and administer that plan in compliance with a variety of federal laws, including the Medicaid Act.  A "state plan" is a comprehensive description of the nature and scope of the state's intended Medicaid program, and this document provides CMS with assurances that the state will administer the Medicaid program in conformity with CMS regulations and federal law.  Filing of the state plan is a pre-requisite to receiving federal funding.

Louisiana has chosen to participate in the Medicaid program and administers its program via a state plan and amendments which have been approved by the state government.  The Louisiana Department of Health and Hospitals (DHH) is the single state agency administering the Louisiana State Medicaid Program (hereinafter the "State Plan").  The current Secretary Mr. Alan Levin and the Undersecretary Charles F. Castille are named as Defendants in the instant action.

Woman's Hospital is a "private, not-for-profit women's and infants' specialty

2

hospital that participates in the Medicaid program."[1]  Woman's Hospital is responsible for approximately 14% of all births in the state of Louisiana, and nationally, it is the 19th largest hospital in terms of deliveries.[2]   Woman's Hospital has brought this lawsuit "due to woefully inadequate reimbursement rates paid to private Medicaid providers in the state of Louisiana which restrict and limit the Medicaid Recipients' right to receive adequate medical care through the State Plan."[3]  The individual plaintiffs in this action include "beneficiaries of the Louisiana Medicaid Program and are patients who are categorically needy and/or medically needy. . . and who have received health care services covered under the program."[4]

The essence of the Plaintiffs' complaint is that the Defendants have failed to administer the Louisiana Medicaid Program and the State Plan in compliance with state and federal law.  The Plaintiffs assert nine violations of federal and state Medicaid laws, including: (1) violation of the Medicaid Equal Access Provision; (2) violation of the Medicaid Comparability Provision; (3) violation of the Medicaid Freedom of Choice Provision; (4) violation of the Medicaid Equity Provision; (5) violation of the Medicaid Reasonable Promptness Provision; (6) violation of the federal regulations enforcing the Medicaid statute; (7) violation of state maximized

---

[1] Complaint (doc. 1) at ¶ 22.

[2] *Id.*

[3] Plaintiffs' Opposition to Motion to Dismiss (doc. 21) at 2.

[4] Complaint (doc. 1) at ¶ 5.

funding requirement; (8) violation of the Supremacy Clause of the U.S. Constitution; and (9) violation of the Equal Protection Clause of the 14th Amendment. The Plaintiffs argue that the enforcement of the Louisiana State Plan is a continuing violation of the aforementioned state and federal laws, and further, that this violation occurs under color of state law.  The Plaintiffs contend that they are entitled to relief for these violations of federal law under 42 U.S.C. § 1983 and declaratory relief under 28 U.S.C. § 2201.  Plaintiffs also claim that there is no adequate remedy under law, and finally, Plaintiffs state that they have complied with all necessary conditions precedent to filing this action.

The Defendants assert three general grounds for dismissing the instant action. First, DHH asserts that § 1983 does not create a private right of action for the Plaintiffs.  Additionally, the Defendants assert that even if the court were to intervene in the matter, the Plaintiffs would not be able to secure the relief requested. Because increasing funding requires approval at several levels of government, the Defendants do not believe the court would be able to monitor compliance with any orders or injunctions.  Finally, the Defendants argue that Woman's Hospital is not entitled to a permanent injunction because an adequate remedy at law is available.    The Defendants also challenge the merits of each of each count contained in the complaint and move to have the complaint dismissed with prejudice.

## Standard for Dismissal For Failure to State a Claim

A motion to dismiss for failure to state a claim may be granted when the complaint fails to state a legally cognizable claim. Fed. Rule Civ. P. 12(b)(6).  As set forth by the United States Supreme Court, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In deciding whether to grant a motion to dismiss for failure to state a claim, a district court must accept the facts of the complaint as true and resolve all ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff.  *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).  The complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief.  *Id.* at 284-85.  Rule 12(b)(6) motions are rarely granted and viewed with disfavor.

## I.   Eleventh Amendment

The Eleventh Amendment renders an "unconsenting state" immune from suits brought in federal court by its own citizens or by citizens of another state. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984).   The principle of sovereign immunity characterized in the Eleventh Amendment is a constitutional limitation on the federal judicial power established in Article III.  *Id.*  The principle that

"a state may not be sued without its consent is a fundamental rule of jurisprudence having so important a bearing upon the construction of the Constitution of the United States that it has become established by repeated decisions of this court." *Id.* at 98.

However, when a suit is brought only against state officials, a question arises as to whether the suit is against the state itself. *Id.* The Eleventh Amendment will bar a suit against state officials when "a state is the real, substantial party in interest." *Id.* at 101. Thus, the general rule is "relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter. And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a state is barred regardless of whether it seeks damages or injunctive relief." *Id.*

However, an exception to the doctrine of sovereign immunity is found in *Ex Parte Young*, where the Supreme Court held that a suit may proceed against a state official, notwithstanding the Eleventh Amendment, when a plaintiff alleges an on-going violation of federal law and seeks relief properly characterized as prospective. *Ex Parte Young*, 209 U.S. 123, 159-160 (1908). This exception to sovereign immunity exists because a State officer acting in contravention of the Constitution is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct." *Id.* at 160. In other words, the State has "no power to impart on him any immunity from responsibility to the supreme authority of the United States." *Id.*

6

The Defendants contend that the action is barred by the Eleventh Amendment because the state is the "real party in interest" even though it is not named as a defendant.[5]  The Defendants contend that any additional Medicaid reimbursement to private facilities would be paid by the treasury of the State of Louisiana; therefore, the state is the real party in interest.[6]  Additionally, the Defendants argue that officials at the DHH were named as defendants because Women's Hospital knew that a suit against the State of Louisiana would violate the Eleventh Amendment.[7]  The Defendants assert that the *Ex Parte Young* exception does not apply because Woman's Hospital has not alleged the enforcement of an unconstitutional statute by state officials in this matter.[8]

Contrary to the Defendants' argument, the Plaintiffs' complaint falls within the *Ex Parte Young* exception to sovereign immunity because (1) it alleges a continuing violation of federal law and (2) seeks prospective, declaratory, or injunctive relief.  *Ex Parte Young*, 209 U.S. at 159-160.  In *Cigna Healthplan of Louisiana*, the Fifth Circuit applied the *Ex Parte Young* exception to a plaintiff seeking to enjoin an on-going violation of federal law, not because the plaintiff was seeking to enjoin a public official

---

[5] Defendants' Supplemental Memorandum in Support of Motion to Dismiss (doc. 18) at 7.

[6] *Id.*

[7] Defendants' Motion to Dismiss (doc. 9) at 8.

[8] Defendants' Supplemental Memorandum in Support of Motion to Dismiss (doc. 18) at 7.

from enforcing an unconstitutional statute.  *Cigna Healthplan of Louisiana, Inc. v. State of La. Ex rel Ieyoub*, 82 F.3d 642, 645 n.1 (5th Cir. 1996).  The Fifth Circuit explained, "it is well established that the federal courts have jurisdiction to hear suits against state officials where, as here, the plaintiffs seek only prospective declaratory or injunctive relief to prevent a continuing violation of federal law."  *Id.* at 645.

Additionally, there is a well-developed body of case law which defines the circumstances under which state officials may be sued in federal court without running afoul of the sovereign immunity doctrine.  It is clearly permissible for a federal court to "enjoin state officials to conform their future conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the state treasury."  *Quern v. Jordan*, 440 U.S. 332, 337 (1979); *Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (noting that "to ensure the enforcement of federal law, however, the *Eleventh Amendment* permits suits for prospective injunctive relief against state officials acting in violation of federal law").  Similarly, the Fifth Circuit recognizes the distinction between a suit against a state officer for monetary damages versus one for prospective relief.  *American Bank & Trust Co. v. Denti,* 982 F.2d 917, 920 (5th Cir. 1993) (holding that the Supreme Court "though it has clarified that *Young* cannot be extended to permit a Suit for equitable monetary restitution from the state treasure for a past breach of a legal duty, has reaffirmed the basic holding of *Young* as to purely prospective relief on numerous occasions").  Courts in other circuits have also allowed such suits to go forward.  *See Antrican v. Odom*, 290 F.3d 178, 185-187 (4th

8

Cir. 2002) (noting that "simply because the implementation of such prospective relief would require the expenditure of substantial sums of money does not remove a claim from the *Ex Parte Young* exception"); *Westside Mothers v. Haveman,* 289 F.3d 852, 861 (6th Cir. 2002) (holding that the plaintiffs' claims of an ongoing violation of federal law and a request for injunctive relief brought the action within the bounds of *Ex Parte Young*).

Woman's Hospital alleges continuing violations of federal law and seeks prospective declaratory relief, not monetary damages.[9]  Although changing the state plan will impact the Louisiana treasury, the ancillary effect does not necessarily mean the action is barred by the Eleventh Amendment.  The Plaintiffs' suit falls within the *Ex Parte Young* exception and is not barred by the Eleventh Amendment. Therefore, the Defendants motion to dismiss the complaint on the basis of sovereign immunity will be denied.

## II.    Medicaid Funding Scheme

The Defendants repeatedly assert that the "comprehensive enforcement scheme" under federal regulations eliminates the necessity of a private right of action under the various Medicaid provisions at issue.[10]   The Defendants present a

---

[9] First Amended and Restated Complaint (doc. 13) at 28-29 (seeking declaratory judgment and a permanent injunction).

[10] Defendants' Supplemental Memorandum in Support of Motion to Dismiss (doc. 18) at 5-7, 13.

"contract" theory of enforcement between DHH and CMS.  Under this "contract," CMS enforces federal Medicaid regulations by withholding or disallowing federal funds to states who violate the Medicaid Act.[11]  The Defendants point to DHH's continuous receipt of federal funding since Louisiana's adoption of the Medicaid program in 1965 as evidence of DHH's total compliance with all federal Medicaid laws and regulations.[12]  In other words, the Defendants believe that enforcement by CMS is the exclusive enforcement mechanism under the Medicaid Act.

Although it is true that a comprehensive remedial scheme for enforcement may preclude private enforcement, the Supreme Court has held that the Medicaid Act does not provide the type of detailed remedial scheme that would supplant an *Ex Parte Young* action.  *Antrican v. Odom*, 290 F.3d 178, 190 (4th Cir. 2002), *discussing Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 521-22 (1990).  The Medicaid Act does not explicitly or implicitly preclude private enforcement of the statute through § 1983 actions.  Furthermore, "[t]hat the Federal Government may withhold federal funds to non-complying States is not inconsistent with private enforcement."  *Harris v. Olszewski*, 442 F.3d 456, 463 (6th Cir. 2006).

Based on this enforcement scheme, the Defendants contend that the State Plan is merely a contract between DHH and CMS.  The court is unpersuaded by the Defendants' "contract" theory of Medicaid Law.  The DHH Secretary has a statutory

---

[11] *Id.* at 5-6.

[12] *Id.* at 6.

10

imperative to implement "rules and regulations . . . not inconsistent with state or federal law" in his administration of the State Plan.  La. R.S. 36:254(D).  The State Plan is the state embodiment of federal law, and DHH officials cannot avoid being held accountable under this law by arguing that Medicaid is merely a contract between DHH and CMS.  This court declines to adopt the contract theory of Medicaid law, and it will deny the Defendants motion to dismiss on the basis of a remedial enforcement scheme.

III.    **Count One: Violation of the Equal Access Provision**

The Equal Access Provision guarantees Medicaid recipients access to medical assistance with respect to plan-specified care and services.   42 U.S.C. § 1396a(a)(30)(A) (2008).  According to the Medicaid Act:

> A state plan for medical assistance must...provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan...as may be necessary...to assure that payments...are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.

42 U.S.C. § 1396a(a)(30)(A) (2008).   Plaintiffs' allege that the current Medicaid payments to private facilities are so inadequate that Women's Hospital is incurring serious financial losses which are threatening its ability to provide adequate access

to Medicaid and non-Medicaid patients.[13]   Additionally, if the payments to Women's Hospital are not prospectively increased, it may not be able to participate fully in the Louisiana Medicaid program, thereby denying access to medical services and severely harming Medicaid obstetrical and neonatal patients.[14]

The Defendants seek to dismiss Count One of the Amended Complaint based upon the recent opinion rendered by the Fifth Circuit in the case of *Equal Access for El Paso, Inc. v. Hawkins*, 509 F.3d 697 (5th Cir. 2007) (hereinafter "El Paso").  The *El Paso* court held that Medicaid's Equal Access provision does "not confer individual private rights that are enforceable under § 1983."  *Id.* at 703.  "The [Medicaid Act's Equal Access] provision does not contain sufficient 'rights-creating' language critical to showing unambiguously the requisite congressional intent to create individualized rights for Medicaid recipients and health care providers."  *Id.*

Based on the Fifth Circuit's holding in *El Paso*, the Defendants ask this court to summarily dismiss the Plaintiffs' claim under the Equal Access provision as neither Medicaid providers nor recipients have a private right of action under this provision. The Plaintiffs ask this court to withhold ruling on this count, because the *El Paso* opinion is being appealed to the Supreme Court.  Because this issue is controlling and because a circuit split is present, this court will withhold ruling on the motion to dismiss with respect to the Equal Access Provision pending the Supreme Court's

---

[13] First Amended and Restated Complaint (doc. 13) at 14.

[14] *Id.*

12

ruling on *El Paso*.

## IV.   Count Two: Violation of the Comparability Provision

Under the Comparability Provision, a state plan must provide "that the medical assistance made available to any individual . . . (i) shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual, and (ii) shall not be less in amount, duration, or scope than the medical assistance made available" to persons who are not "categorically needy."  42 U.S.C. § 1396a(a)(10)(B) (2008).  This provision guarantees that medical service to the "categorically needy" be equal to or better than care provided to any other individual funded by Medicaid.  Woman's Hospital contends that the Louisiana Plan violates this provision by inadequately reimbursing private hospitals.[15]   Thus, the medical assistance available to Medicaid recipients at private hospitals is less in "amount, duration, and scope" than the medical assistance made available to Medicaid beneficiaries and other individuals at state facilities.[16]  In contrast, the Defendants ask the court to extend the Fifth Circuit's ruling in *El Paso* to preclude a private right of action for violation of the Comparability Provision exists under § 1983.

The Supreme Court utilizes a three-part test to determine whether legislation creates a private right of action under § 1983.  *Blessing v. Freestone*, 520 U.S. 329,

---

[15] First Amended and Restated Complaint (doc. 13) at 16.

[16] *Id.*

13

340-41 (1997).   Under the *Blessing* test: (1) Congress must have intended the provision in question to benefit the plaintiff, (2) the plaintiff must demonstrate that the right allegedly protected by the statutes is not so "vague and amorphous" that its enforcement would strain judicial competence, and (3) the statute must unambiguously impose a binding obligation on the States.   *Id.* at 340-41.   Basically, "the provision giving rise to the asserted right must be couched in mandatory rather than precatory terms."   *Id.*   The burden rests on the plaintiff to show that the statute created an enforceable right.   *Id.*   In addition, *Gonzaga* clarified the first element of the *Blessing* test. *See Gonzaga University v. Doe*, 536 U.S. 273, 280 (2002).   Under *Gonzaga*, creation of a new right enforceable under §1983 requires Congress to state the right "in clear and unambiguous terms, i.e., no less and no more than what was required for Congress to create new rights enforceable under an implied private right of action." *Id.*

For the same reasons discussed with regard to the Equal Access Provision, the Defendants contend that there is no private right of action under § 1983.[17]   The Defendants argue that the language in the Comparability Provision is the same as the Equal Access Provision, and consistent with *El Paso*, a private right under the Comparability Provision was not "unambiguously conferred."[18]   The Defendants note

_____

[17] Defendants' Supplemental Memorandum in Support of Motion to Dismiss (doc. 18) at 11.

[18] *Id.* at 13.

14

that Congress did not intend to create a private right of action because the federal regulations allow for enforcement by a federal agency; therefore, there is no need for private suits under § 1983.[19]

Contrary to Defendants' argument, distinct differences exist between the Equal Access Provision and the Comparability Provision. The Equal Access Provision speaks only to the state and the Secretary in their functions of proposing and approving a state plan calculated to "enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population of the geographic area." 42 U.S.C. § 1396a(a)(30)(A) (2008). Therefore, the Equal Access provision "speaks only in terms of institutional policy and practice, has an 'aggregate' rather than individualized focus, and is not concerned with a particular individual or class of individuals." *El Paso*, 509 F.3d at 703.

In contrast, the language in the Comparability Provision is concerned with the categorically needy "individual" and the medical assistance made available to him or her. Under the Comparability Provision, "the medical assistance made available shall not be less in amount, duration, or scope than the medical assistance made *available to any other such individual*." 42 U.S.C. § 1396a(a)(10)(b)(I) (2008) (emphasis added). The language of the Comparability Provision is specifically targeted to provide adequate healthcare assistance to individual Medicaid patients and invites

---

[19] *Id.* at 13-14.

a comparison of the medical assistance to persons covered under Medicaid and the community at large.  *See* 42 U.S.C. § 1396a(a)(10)(b)(ii) (2008) (medical assistance to Medicaid recipients shall not be less than assistance made available to "individuals not described" in the statute).   The Comparability provision also uses mandatory language of "shall" which indicates that Congress sought to impose a binding obligation on those enforcing the State Plan.   In short, this court finds that the Comparability Provision creates an "unambiguously conferred right" for the individual; is not so "vague and amorphous" as to render the provision unenforceable by the courts; and imposes on the state a mandatory obligation to provide comparable medical assistance for each individual under *Blessing* and *Gonzaga*.  Therefore, the Defendants' motion to dismiss the Plaintiffs' claims under the Comparability Provision will be denied.

## V.    Count Three: Violation of the Freedom of Choice Provision

The Freedom-of-Choice Provision requires the State Plan to provide that "*any individual eligible for medical assistance* may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required . . . who undertakes to provide him such services."  42 U.S.C. § 1396a(a)(23) (2008) (emphasis added).

The Plaintiffs' argue that the effect of unequal funding to private hospitals decreases and limits the availability of Medicaid services at private facilities which

violates the recipient's freedom to choose a provider.[20]   Women's Hospital relies on a recent Sixth Circuit case which supports a private right of action pursuant to the Freedom-of-Choice Provision under § 1983.[21]   The Defendants maintain that no private right of action exists in light of *El Paso,* because the Freedom-of-Choice Provision does not contain sufficient rights-creating language.

As previously indicated, the Equal Access Provision speaks only in terms of policy and practice and is not concerned with individuals or a particular class of individuals.  *El Paso*, 509 F.3d at 702.  The provision address the state and secretary in their functions "enlist enough providers so that care and services are available under the plan at least the extent that such care and services are available to the general population of the geographic area."  42 U.S.C. § 1396a(a)(30)(A) (2008).

In contrast, the Freedom of Choice provision guarantees that:

> *Any individual eligible* for medical assistance *may obtain such assistance* from any institution, agency, community pharmacy, or person, qualified to perform the service or services required...who undertakes to provide him such services.  An enrollment of an individual eligible for medical assistance in a primary care case-management system...or a similar entity shall not restrict the choice of the qualified person whom the individual may receive services under.

42 U.S.C § 1396a(a)(23) (2008) (emphasis added).  Unlike the Equal Access Provision, the Freedom of Choice Provision speaks directly to the eligible "individuals" under Medicaid and ensures their ability to personally seek medical

---

[20] First Amended and Restated Complaint (doc. 13) at 18.

[21] *Id.  See Harris v. Olszewski*, 442 F.3d 456, 461 (6th Cir. 2006).

assistance.  This language is focused on the individual Medicaid recipient, and his or her access to medical assistance of his or her choosing.  In other words, this provision "gives recipients the right to choose among a range of qualified providers without government interference."  *O'Bannon v. Town Court Nursing Ctr.*, 447 U.S. 773, 785 (1980).  Thus, this provision contains sufficient "rights-creating language" to convey an individual cause of action under § 1983.  Furthermore, the language is mandatory as it indicates that a state "must" provide this freedom of choice, and the plain language of the provision is sufficiently clear to allow for judicial enforcement.  Therefore, because the Freedom of Choice Provision satisfies the *Blessing* and *Gonzaga* tests, the Defendants' motion to dismiss with respect to Count Three will be denied.


**VI.    Count Four: Violation of the Equity Provision**

Under the Equity Provision, the State Plan must provide for financial participation by the State equal to all of the non-federal share of the expenditures under the State Plan on an "equalization basis" which will "assure that the lack of adequate funds from local sources will not result in lowering the amount, duration, scope or quality of care and services available under the State Plan."  42 U.S.C. § 1396a(a)(2) (2008).

The Defendants continue to assert that the Equity Provision does not contain sufficient rights creating language and no private right of action exists under this

18

provision in light of *El Paso*.  Additionally, they assert that the provision is targeted to ensure equivalent health care for Medicaid recipients in both wealthy and poor areas of the state, and as a result, this provision is unrelated to the various reimbursement rates for public versus private institutions.[22]

The Plaintiffs' contend that disparate reimbursement rates for public and private hospitals lowers the amount, duration, scope and quality of care and services available to Medicaid recipients.[23]  Additionally, Woman's Hospital argues that the "distribution of Medicaid funds between private and public providers" is not the core of their claims under the Equity Provision, but the effect that distribution has under the State Plan on denying recipients their individual right to equivalent health care.[24]

In analyzing the language of the Equity Provision in light of *Blessing* and *Gonzaga*, this court finds that the Equity Provision does not contain sufficient rights-creating language to ensure a private right of action under § 1983.

The Equity Provision dictates that:

A State plan for medical assistance must. . . provide for financial participation by the State equal to all of such non-Federal share or provide for distribution of funds from Federal or State sources, for carrying out the State plan, on equalization or other basis which will assure that he lack of adequate funds from local sources will not result in lowering the amount, duration, scope, or quality of care and services available under the plan.

---

[22] Defendants' Supplemental Memorandum in Support of Motion to Dismiss (doc. 18) at 18.

[23] Plaintiffs' Opposition to Motion to Dismiss (doc. 21) at 42.

[24] *Id.* at 43.

42 U.S.C 1396a(a)(2) (2008).  The plain language of the statute omits all reference to individual Medicaid recipients and/or their rights under the Medicaid Act.  As a result, the language of the Equity Provision does not contain the language of "unambiguously conferred" individual rights as required by *Gonzaga*.  Instead, the Equity Provision addresses the percentage of the non-federal share of Medicaid funding to be provided by the state or local government.  The focus of this provision is the allocation of funds across the state on an "equalization or other basis;" therefore, because this provision is directed at the aggregate effect of state funding and not individual rights, this court does not find a private right of action under Count Four.  Accordingly, the Defendants' motion to dismiss with respect to the Equity Provision will be granted.

## VII.   Count Five: Violation of the Reasonable Promptness Provision

As in the preceding sections, the Defendants continue to assert that no private right of action exists under the Reasonable Promptness Provision.  The Reasonable Promptness provision requires the state plan to "provide that *all individuals wishing to make application* for medical assistance under the plan *shall have opportunity* to do so, and that such assistance shall be furnished with reasonable promptness *to all eligible individuals*."  42 U.S.C. § 1396a(a)(8) (2008) (emphasis added).

Under the *Blessing* and *Gonzaga* framework, the Reasonable Promptness

20

provision clearly creates a private right of action for Medicaid recipients.  First, the provision is directed at "all individuals wishing to make an application" for assistance; thus, this provision contemplates the individual right to medical assistance for all persons eligible under Medicaid.  Second, the right conferred is clear in that the requested assistance "shall be furnished with reasonable promptness to all eligible individuals."   42 U.S.C. § 1396a(a)(8) (2008).   The provision uses mandatory language requiring that the individual medical assistance "shall" be delivered with reasonable promptness, and as such, the Reasonable Promptness Provision asks the court to examine the actual medical assistance provided to individual plaintiffs. Contrary to the Defendants' argument, the provision is not limited to assuring that "DHH makes individual decisions with respect to Medicaid eligibility with reasonable promptness."[25] The word "assistance" refers to "medical assistance" in the beginning section of the Reasonable Promptness Provision, and thus, this provision requires the prompt administration of medical care.  Finally, this court does not find that the obligation on the states is ambiguous or impossible to enforce.  The Plaintiffs allege that the State Plan "allows for a delay in the receipt of medical services and financial assistance provided under the State Plan to individual recipients."[26]  This court finds that this allegation of delayed medical services triggers a potential violation of the

---

[25] Defendants' Supplemental Memorandum in Support of Motion to Dismiss (doc. 18) at 20.

[26] First Amended and Restated Complaint (doc. 13) at ¶ 65.

Reasonable Promptness Provision, and construing all ambiguities in favor of the non-moving party, the motion to dismiss will be denied with respect to the individual Medicaid recipient plaintiffs.

As the language of the Reasonable Promptness provision targets individuals applying for medical assistance, this court does not find that providers like Women's Hospital have standing to sue under this provision.   Therefore, with respect to Women's Hospital as a medical provider, the motion to dismiss will be granted.

### VIII.   Count Six: Violation of Federal Medicaid Regulations

In the Complaint, the Plaintiffs allege numerous violations of federal regulations enforcing the various provisions of the Medicaid Act.[27]  The parties assert the same arguments that have been reiterated with respect to Counts One through Five. Specifically, the Defendants contend that no private right of action exists under the various regulations as the language of the provisions tracks the language of the Equal Access Provision.

This court will treat allegations under the implementing regulations in the same way it has construed allegations under the various statutory provisions.  Therefore, Count Six will be: (1)   stayed with respect to violations under the implementing regulations of the Equal Access Provision;   (2) denied with respect to violations of

_____

[27]  The Plaintiffs allege violations of 42 C.F.R. §§ 447.204, 447.253, 440.230, 440.240, 435.930 (2008).

the regulations implementing the Comparability Provision, the Freedom of Choice Provision, and the Reasonable Promptness Provision (for Medicaid recipients); and (3) granted with respect to violations of the Equity Provision and the Reasonable Promptness Provision (for Medicaid providers).

## IX.    Count Seven: Violation of the State Maximized Funding Requirement

The Plaintiffs allege a violation of state law by the DHH's failure to "maximize" Medicaid funding and rates for hospitals who provide care to "fragile newborns or critically ill children" or have more than 25% of patients on Medicaid.  *See* La. R.S. 46:979 (2008).   The Defendants argue that alleged violations of state law are prohibited by the sovereign immunity doctrine,[28] and upon further review, the Plaintiffs do not dispute this point.[29]   Therefore, Count Seven will be dismissed without prejudice to the plaintiffs' right to reassert this claim in a court with appropriate subject matter jurisdiction.

## X.    Count Eight: Violation of the Supremacy Clause

Women's Hospital and the individual plaintiffs allege that the State Plan is inconsistent with federal Medicaid regulations, and as a result, the State Plan violates

---

[28] Defendants' Supplemental Memorandum in Support of Motion to Dismiss (doc. 18) at 25.

[29] Plaintiffs' Opposition to Motion to Dismiss (doc. 21) at 54.

the Supremacy Clause.  The Plaintiffs incorporate by reference all of the allegations in Counts One through Seven and argue that the violation of these various provisions violates the Constitution.  As the specific statutory provisions are listed in Count Eight and the allegations are incorporated by reference, this court finds the Defendants' assertion that it is unable to respond to Count Eight due to lack of specificity to be without merit.[30]

In addition, DHH contends that the Louisiana State Plan is not a state law, but a contract between DHH and CMS.[31]  As discussed in Part II of this ruling, this court finds the Defendants' "contract theory" of the relationship between DHH and CMS to be without unavailing.[32]  The Defendants have not directed the court to any case law which construes this relationship as merely contractual, and regardless, a state "participating in the Medicaid program remains subject to the Medicaid regulations." *St. Tammany Parish Hosp. Service Dist.* v. Dept. of Health and Human Resources, 677 F.Supp. 455, 460 (E.D.La. 1988) (although this case is not substantively applicable, it demonstrates that courts have entertained challenges to the state plan on Supremacy Clause grounds).  The DHH is bound to administer the State Plan in accordance with federal law, and to the extent that the state plan conflicts with federal

---

[30] *See* Defendants' Supplemental Memorandum in Support of Motion to Dismiss (doc. 18) at 26.

[31] *Id.*

[32] *See infra* Part II at 9-11.

law, the Plaintiffs have sufficiently alleged a Supremacy Clause claim.  Therefore, the Defendants' motion to dismiss on Supremacy Clause grounds will be denied.

## XI.    Count Nine: Violation of the Equal Protection Clause

Finally, Women's Hospital argues that it is a "de facto public hospital" because it is required to provide care to Medicaid beneficiaries in need of maternity services, yet it is compensated at a much lower rate than state-run charity hospitals.[33]   In seeking to dismiss the Plaintiffs' Equal Protection claim, the Defendants rely on an Eighth Circuit case holding that no Equal Protection violation existed because "private facilities and public facilities are not similarly situated, and that even if they were, Rule 53 [providing disparate reimbursement rates for public versus private hospitals] is rationally related to a legitimate government purpose."  *See Ass'n of Residential Resources in Minnesota, Inc. v. Gomez*, 51 F.3d 137, 141 (8th Cir. 1995).

Although the Eighth Circuit case is factually similar, this court must look at the evidence from a different standard than the Eighth Circuit.  In the instant action, the court is considering a motion to dismiss, not a motion for summary judgment. Therefore, the court must accept the facts of the complaint as true and resolve all ambiguities or doubts regarding the sufficiency of the claim in favor of the non-moving party.  *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). Unlike the Eighth Circuit which was able to consider the various factual distinctions

---

[33] Plaintiffs' Opposition to Motion to Dismiss (doc. 21) at 50.

25

between public and private hospitals in Minnesota, this court must accept the allegation that  the distinction between public and private hospitals in Louisiana is "discriminatory and irrational."[34]   Because this court accepts the allegations that Women's Hospital is similarly situated to a state-funded charity hospitals and the allegation that there is no rational reason for this distinction, the Defendants' motion to dismiss for failure to state a claim under the Equal Protection clause will be denied.


## XII.   Summary

Accordingly, the Defendants' Motion to Dismiss (doc. 9) is granted in part and denied in part.  The motion is granted and the following claims are dismissed with prejudice: (1) the Equity Provision and any claim under its accompanying regulations (Count Four and Six), (2) with respect to Medicaid providers, the Reasonable Promptness Provision and any claim under its accompanying regulations  (Count Five and Six) .  The motion is denied with respect to: (1) the Comparability Provision and any claim under its accompanying regulations  (Count Two and Six), (2) the Freedom of Choice Provision and any claim under its accompanying regulations (Count Three and Six), (3) with respect to Medicaid recipients, the Reasonable Promptness Provision and any claim under its accompanying regulations (Count Five and Six), (4) the Supremacy Clause (Count Eight), and (5) the Equal Protection Clause (Count Nine).  Finally, the alleged violations of state law under Count Seven

---

[34]   First Amended and Restated Complaint (doc. 13) at ¶ 87.

are ordered dismissed without prejudice to the Plaintiffs' right to re-file the allegations

in a court with proper jurisdiction.

Baton Rouge, Louisiana, July 10, 2008.

JAMES J. BRADY, JUDGE
MIDDLE DISTRICT OF LOUISIANA